UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERREBONNE PARISH NAACP, ET AL.

VERSUS

PIYUSH ("BOBBY") JINDAL the GOVERNOR
of the STATE OF LOUISIANA, in his official
capacity, ET AL.

CIVIL ACTION

NO. 14-069-JJB-SCR

## RULING

This matter is before the Court on a Motion (doc. 18) to Dismiss brought by Defendant, Tom Schedler, in his official capacity as Secretary of State for the State of Louisiana ("Schedler"). Plaintiffs, the Terrebonne Parish Branch of the National Association for the Advancement of Colored People, Reverend Vincent Fusilier, Sr., Lionel Myers, Wendell Desmond Shelby, Jr., and Daniel Turner (collectively, referred to as "Plaintiffs"), have filed an opposition (doc. 22), to which Schedler has filed a reply (doc. 24). Oral argument is not necessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Schedler's Motion (doc. 18) to Dismiss is DENIED.

**I.     Background**

Plaintiffs are Terrebonne Parish's ("Terrebonne" or the "Parish") local branch of the National Association for the Advancement of Colored People ("NAACP") and several Black registered voters who reside in the Parish and are members of the Terrebonne NAACP. Plaintiffs bring this action against Schedler, as well as, Piyush "Bobby" Jindal as Governor of the State of Louisiana in his official capacity, and James "Buddy" Caldwell as Attorney General of the State of Louisiana in his official capacity (collectively, referred to as "Defendants"), to challenge Terrebonne's use of at-large voting to elect judges to the 32nd Judicial District Court.

Plaintiffs contend that the Parish's use of at-large voting "dilutes the voting strength of Black voters in Terrebonne Parish" in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (Doc. 1, at ¶ 3). Plaintiffs further contend that at-large voting "was enacted and/or maintained with a discriminatory purpose" in violation of Section 2 and the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution. (Doc. 1, at ¶ 4). Plaintiffs allege that as a result of this unlawful voting scheme, no Black candidate has ever been elected to the 32nd Judicial District Court in the 191 years that the Parish's judiciary has existed. (Doc. 1, at ¶¶ 39-40). According to Plaintiffs, this remains the case even though Terrebonne's Black voters constitute a cohesive voting bloc that overwhelmingly votes for Black candidates in local elections. (Doc. 1, at ¶¶ 46-49).

Plaintiffs allege that the Defendants have maintained the at-large voting scheme to "dilute, minimize, and cancel out the voting strength of Black voters in Terrebonne." (Doc. 1, at ¶ 68). Plaintiffs further allege that "Defendants purported rationales for maintaining its at-large method of electing members for the 32nd Judicial District are tenuous and/or pretexual…[and]…cannot overcome the fact that at-large voting for the 32nd Judicial District consistently yields and maintains a racially segregated body." (Doc. 1, at ¶¶ 80-81). Plaintiffs contend that a different voting scheme, one that gave the Black voters of the Parish the opportunity to elect representatives responsive to their needs, would give Terrebonne's Black residents greater confidence in the administration of justice in the Parish and would make the judicial committees, administrative bodies, and other important judiciary roles over which the 32nd Judicial District has power and influence fairer and more inclusive. (Doc. 1, at ¶ 66).

Based upon the foregoing, Plaintiffs pray for, *inter alia*, the following declaratory and injunctive relief: (1) a declaration that Defendants' at-large method of electing members to the

32nd Judicial District was adopted and/or maintained with a discriminatory purpose in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the Constitution; (2) a declaration that Defendants' at-large method of electing members to the 32nd Judicial District has the result of denying or abridging the right to vote on account of race or color in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the Constitution; and (3) an injunction precluding the Defendants, their successors, and agents from enforcing, administering, implementing, or conducting any future elections to the Parish's 32nd Judicial District under the current at-large method of election.

Schedler brings this Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Schedler argues that this Court lacks subject matter jurisdiction over the claims asserted against him because such claims do not present a case or controversy as required by Article III of the United States Constitution. Alternatively, Schedler argues that even if the Court does have subject matter jurisdiction to adjudicate these claims, the Plaintiffs' complaint fails to adduce enough factual matter to state a plausible claim for relief.

## II. Legal Standards for Rules 12(b)(1) and 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge a court's subject matter jurisdiction at any time. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). In determining whether it has subject matter jurisdiction, the court may look at the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.*

When a Rule 12(b)(1) motion is filed in conjunction with a 12(b)(6) motion, the court should resolve the jurisdictional issue before addressing any attack on the merits. *Ramming*, 281 F. 3d at 161. "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *see also Ramming*, 281 F.3d at 161.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing the complaint, a court must accept all well-pleaded factual allegations as true. *C.C. Port. Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Facts must be viewed in the light most favorable to the non-movant. *See Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court need not determine at this preliminary stage whether the plaintiff's claims will ultimately succeed on the merits. *Id.* at 556. Instead, a court must identify the factual allegations entitled to the presumption of truth and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III. Discussion
#### A. Standing

Article III of the United States Constitution establishes as an irreducible minimum that, in order to invoke the judicial power of a federal court, there must exist a "case or controversy" between the parties. *United States v. Hays*, 515 U.S. 737, 742-43 (1995). Standing is thus a jurisdictional requirement that focuses on the party seeking the remedy, not the issue presented for adjudication. *James v. City of Dallas*, 254 F.3d 551, 562-63 (5th Cir. 2001). Standing

involves three elements: injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff must have suffered an injury in fact—that is, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Hays*, 515 U.S. at 742-43. Second, the injury must be traceable to the defendant; in other words, a causal connection must exist between the injury suffered and the complained of conduct. *Id.* Third, the injury must likely be redressable by a favorable decision of the court. *Id.* Speculation as to the availability of relief is not enough. *Id.*

Schedler does not contest that Plaintiffs have alleged an injury in fact. Instead, Schedler asserts that his duties as Secretary of State are primarily ministerial and concerned with the mechanics of conducting elections and therefore, he is without the power to enforce, defend, or change the laws governing the voting schemes in the State. For this reason, Schedler argues that Plaintiffs' injury is neither traceable to his conduct nor redressable by any correction of his conduct.

In response, Plaintiffs assert that their complaint contains sufficient allegations to satisfy the elements of Article III standing. First, Plaintiffs contend that their complaint sufficiently pleads an injury in fact. As to the contested elements, Plaintiffs aver that Schedler's conduct is indisputably traceable to their injuries. Plaintiffs argue that Schedler's role as "chief election officer," in which he is charged with maintaining an allegedly unlawful voting scheme, is "a significant component of the discriminatory implementation and results of the electoral method for the Parish court, which continue to harm Plaintiffs." (Doc. 22, at p. 16). Plaintiffs further aver that their sought after relief—an injunction preventing Schedler from continuing to hold, supervise, administer, and certify future elections under an at-large voting method and an order requiring Schedler to implement and maintain elections under a district-based plan for electing
5

judges to the 32nd Judicial District—will adequately redress their injury. Accordingly, Plaintiffs argue that they have satisfied the redressabilty element of the Article III standing analysis.

To support his assertions, Schedler relies heavily upon the Fifth Circuit's decision in *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003). There, the plaintiff sued the presiding judge of a Harris County probate court for judicial actions taken during state guardianship proceedings. After addressing the standing issue *sua sponte*, the panel held that the plaintiff lacked standing to pursue a claim against the probate judge. *Bauer*, 341 F.3d at 357-358. While the panel's holding was primarily based upon the fact that the plaintiff failed to satisfy the injury in fact element of the Article III analysis since there were no ongoing probate proceedings and therefore, no ongoing injury or threat of future injury, Schedler relies upon the panel's related finding that standing was absent due to a lack of adversity between the plaintiff and the defendant. *Id.* at 359. Such reliance is misguided. The panel found that the parties lacked adversity because the judge was acting in his adjudicatory capacity and therefore, his actions could not constitute a justiciable controversy. *Id.* As these are not the facts presented in the instant matter, *Bauer* is easily distinguishable and thus, unavailing.

More instructive to the Court's determination is Fifth Circuit precedent that stands for the proposition that state officials may be sued in their official capacities when they have the power to enforce, defend, or apply the law in question. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (articulating "the long-standing rule that a plaintiff may not sue a state official who is without power to enforce the complained of statute."); *Chancery Clerk of Chickasaw County, Miss. V. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981) (allowing plaintiffs to sue state officials with executive responsibility for defending the challenged laws).

6

Here, it is uncontested that the Plaintiffs have alleged in injury in fact. They have further alleged that this injury in fact was caused by Schedler's conduct as "chief election officer," in which he was responsible for maintaining, executing, and enforcing[1] the at-large voting method. (Doc. 1, at ¶¶ 19-21). Finally, Plaintiffs have alleged that their injury would be redressed if Schedler was enjoined from administering, implementing, and conducting future elections pursuant to the at-large voting method and ordered to administer, implement, and conduct elections in a non-discriminatory way consistent with the law. (*See* Doc. 1, at ¶ 85). Given that the Plaintiffs have alleged an injury in fact which is fairly traceable to Schedler's conduct and can be redressed by a favorable order of this Court, Schedler cannot be said to be an "impotent defendant." To the contrary, this suit calls into question the legality of Schedler's actions taken pursuant to his duties as the secretary of state and calls upon him to defend those actions. Thus, Plaintiffs have alleged that Schedler has a sufficiently "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Chancery Clerk of Chickasaw County, Miss.*, 646 F.2d at 160 (maintaining that state officials who were sued based upon their application and enforcement of a challenged statute had the requisite personal stake in the outcome of the suit). Accordingly, the Court finds that Plaintiffs have satisfied all of the requirements of Article III by alleging sufficient factual matter that would entitle them to relief.

    **B. Sufficiency of Complaint**

---

[1] Schedler argues at length that he does not have enforcement powers and therefore, cannot have caused the Plaintiffs' injury. The Court will address these arguments *infra* in its discussion of the sufficiency of the complaint. It is enough to say here, however, that Plaintiffs have alleged sufficient facts to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1).

Plaintiffs' complaint asserts claims against Defendants under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution. Schedler does not contest the sufficiency of the Plaintiffs' Section 2 claim and therefore, it will not be addressed. Instead, Schedler focuses on Plaintiffs' constitutional claims. Schedler argues at length that the Fourteenth Amendment claim fails as asserted against him because he could not and therefore, did not take any of the allegedly unlawful actions upon which the claim is asserted. He further argues that the complaint does not assert allegations against him with the requisite specificity, but instead, lumps him together with the other Defendants. Schedler argues that the Fifteenth Amendment claim must be dismissed because Supreme Court precedent precludes a plaintiff from pursuing a vote dilution claim under the Fifteenth Amendment.

**i.     The Fourteenth Amendment Claim**

A voting scheme violates the Fourteenth Amendment if it is "'conceived or operated as [a] purposeful device[] to further racial discrimination' by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population." *Rogers v. Lodge*, 458 U.S. 613, 617 (1982). To succeed on a vote dilution claim, the plaintiff must show that the voting scheme had a discriminatory effect and purpose. *Backus v. South Carolina*, 857 F.Supp.2d 553, 568 (D.S.C. 2012) *aff'd* 133 S.Ct. 156 (2012). To prove discriminatory effect, a plaintiff must offer proof that "the racial minority's voting potential 'has been minimize[d] or cancel[led] out or the political strength of such a group adversely affect[ed].'" *Id.* (citation omitted). Additionally, a plaintiff must offer "a reasonable alternative voting practice to serve as the benchmark 'undiluted' voting practice." *Id.* (quoting *Reno v. Bossier Parish Sch. Bd. (Reno I)*, 520 U.S. 471, 480 (1997)). To prove discriminatory purpose, a plaintiff may rely upon either direct or

8

circumstantial evidence of discriminatory intent.  *Rogers*, 458 U.S. at 618.  Absent direct evidence, "discriminatory purpose may be inferred from the totality of the relevant facts, including the fact, if it is true, that the laws bear more heavily on one race than another." *Id.* (citation omitted).  Relevant factors to be considered include, but are not limited to, whether there is (1) bloc voting along racial lines; (2) low Black voter registration; (3) exclusion from the political process; (4) unresponsiveness of elected officials to the needs of minorities, and (5) depressed socio-economic status attributable to inferior education, inferior employment, and housing discrimination.  *Ketchum v. Byrne*, 740 F.2d 1398, 1406 (7th Cir. 1984).

After reviewing the complaint in light of the abovementioned case law, the Court finds that Plaintiffs have sufficiently alleged a Fourteenth Amendment claim against Schedler.  First, the complaint's allegations satisfy the requirements for stating a Fourteenth Amendment claim. To prove discriminatory effect, Plaintiffs allege that the Defendants' method of at-large voting dilutes the Parish's Black vote which has resulted in no Black judge being elected to the Parish's judiciary in its 191-year existence.  (Doc. 1, at ¶¶ 39-40).  Additionally, Plaintiffs allege that Terrebonne's Black population is sufficiently numerous and geographically compact to provide for the creation of a single-member district (Doc. 1, at ¶ 44), and offer single shot or bullet voting as a reasonable alternative voting practice (Doc. 1, at ¶ 59).  To prove discriminatory purpose under the totality of the circumstances, Plaintiffs allege that: there is bloc voting along racial lines (Doc. 1, at ¶¶ 45-52); there is an unresponsiveness of elected officials to the needs of Black voters in the Parish as illustrated by the a racially insensitive incident involving Judge Timothy Ellender (Doc. 1, at ¶¶ 63-65); Blacks in the Parish have higher rates of poverty and lower rates of education and employment than whites in the Parish (Doc. 1, at ¶¶ 29-31); and that

the lower educational and socio-economic statuses of Black voters "undermine the ability of Black citizens of Terrebonne to participate effectively in the political process" (Doc. 1, ¶¶ 62).

Second, the facts pled in the complaint make it facially plausible that Schedler has the authority to take the allegedly illegal actions upon which the Fourteenth Amendment claim is based. The complaint alleges that Schedler, as "chief election officer" has the power and authority to maintain, execute, and enforce the 32nd Judicial District's at-large voting method. (Doc. 1, at ¶¶ 19-21). The complaint's allegations are not conclusory, but rather factual allegations that Plaintiffs support with citations to Louisiana law, which provides that, "The secretary of state…shall be the chief election officer of the state…He shall…promulgate and publish all laws enacted by the legislature…" LA. CONST. ART. IV, § 7. Black's Law Dictionary defines "enforce" as "To give force or effect to (a law, etc.); to compel obedience to," and "promulgate," *inter alia*, as "To put (a law or decree) into force or effect." BLACK'S LAW DICTIONARY 608, 1334 (9th ed. 2009).

Viewing the complaint's allegations in light of Louisiana law and these widely accepted definitions, the Court finds that Plaintiffs have pled sufficient factual allegations to make their claim against Schedler plausible on its face. At the very least, it is plausible that Schedler's role as chief election officer requires him to engage in conduct that gives effect to the allegedly unlawful voting scheme. The Court's conclusion finds further support in its recent decision in *Hall v. Louisiana*, 12-cv-00657-BAJ-RLB (M.D. La. Sept. 30, 2013). There, Chief Judge Brian Jackson found that a plaintiff making similar allegations as those made by Plaintiffs in the instant case had sufficiently alleged that Schedler had at least some connection with the enforcement of the challenged judicial election plan. It is important to observe that the Court's conclusion in the instant matter is in no way a dispositive finding that Schedler has enforcement authority, as such

would be improper at this stage of the litigation. Instead, the Court finds that the factual allegations are sufficient to withstand a motion to dismiss. Finally, Schedler's contention that the allegations are not pled against him with the requisite specificity is without merit. For the abovementioned reasons, Plaintiffs have sufficiently pled a vote dilution claim under the Fourteenth Amendment against Schedler.

    **ii.**    **The Fifteenth Amendment Claim**

As to Plaintiffs' Fifteenth Amendment claim, a review of the jurisprudence reveals a purported circuit split on whether a vote dilution claim is cognizable under the Fifteenth Amendment. *See Backus*, 857 F.Supp.2d at 569 (recognizing the split). This purported split results from the Supreme Court leaving open the question of whether the Fifteenth Amendment is a vehicle by which to bring a vote dilution claim. *See Voinovich v. Quilter*, 507 U.S. 146, 159 (1993) ("This Court has not decided whether the Fifteenth Amendment applies to vote dilution claims; in fact, we never have held any legislative apportionment inconsistent with the Fifteenth Amendment.").

In *Backus*, the court pointed to the differing opinions of the Fifth Circuit and the Third Circuit to illustrate the circuit split. While the court in *Backus* and Schedler view the Fifth Circuit's decision in *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000) as definitively stating that a vote dilution claim is not cognizable under the Fifteenth Amendment, this Court disagrees. In fact, the panel in *Prejean* did not specifically address whether the Fifteenth Amendment applied to vote dilution claims as it was charged with determining whether subdistricting for state judicial elections was done for predominately racial reasons in violation of the Fifteenth Amendment. *Prejean*, 227 F.3d at 518. Instead, to dismiss the state's "floodgates of litigation" argument, the panel stated, "Indeed, the Supreme Court has rejected application of the Fifteenth

Amendment to vote dilution causes of action." *Id.* at 519. This is not a definitive pronouncement of the Fifth Circuit's position, but rather recognition of the fact that the jurisprudence makes it difficult to succeed on a vote dilution claim under the Fifteenth Amendment. Difficult neither means precluded nor impossible. *See e.g.*, *Rodgers v. Lodge*, 458 U.S. 613 (1982) (affirming the Fifth Circuit and district court's finding that a county's at-large voting method impermissibly diluted the vote of black residents in violation of, *inter alia*, their Fifteenth Amendment rights); *Jones v. City of Lubbock*, 727 F.2d 364, 370-372 (5th Cir. 1984) (evaluating a Fifteenth Amendment claim under the assumption that it proscribes voting dilution). Accordingly, the Court finds that Plaintiffs may bring a vote dilution claim under the Fifteenth Amendment.

Finally, a substantive review of the complaint reveals that Plaintiffs have sufficiently pled a vote dilution claim under the Fifteenth Amendment. Courts have observed that the elements of a Fourteenth and Fifteenth Amendment vote dilution claim mirror one another. *See Backus*, 857 F.Supp.2d at 569. Indeed, both require a discriminatory or dilutive effect and a discriminatory purpose. *See id.*; *see also Jones*, 727 F.2d at 370. Therefore, for the same reasons that the Court has found that Plaintiffs have sufficiently pled a Fourteenth Amendment vote dilution claim, the Court now finds that they have successfully pled a Fifteenth Amendment vote dilution claim.

## IV.   Conclusion

For the reasons stated herein, the Defendant's Motion (doc. 18) to Dismiss is DENIED. Signed in Baton Rouge, Louisiana, on July 18, 2014.

```
                                            _____
                                            JUDGE JAMES J. BRADY
                                            UNITED STATES DISTRICT COURT
                                            MIDDLE DISTRICT OF LOUISIANA
```