UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


TERREBONNE PARISH BRANCH
NAACP, ET AL                                    CIVIL ACTION

VERSUS                                          NUMBER 14-69-JJB-SCR

PIYUSH "BOBBY" JINDAL, THE
GOVERNOR OF THE STATE OF
LOUISIANA, ET AL


## RULING ON MOTION FOR SANCTIONS UNDER FRCP 37(b) FOR NOT OBEYING A COURT ORDER

Before the court is Motion for Sanctions under FRCP 37(b) for Not Obeying a Court Order filed by defendant Tom Schedler in his official capacity as Louisiana Secretary of State. Record document number 50. The motion is opposed.[1]

Defendant Schedler asserted that the supplemental answers and responses provided by the plaintiffs pursuant to the court's Ruling on Motion to Compel Discovery remain deficient.[2] Defendant argued that the plaintiffs' failure to comply with the ruling justifies substantive and monetary sanctions. Defendant requested that the plaintiffs be sanctioned in the form of a default judgment, or in the alternative, be barred from presenting evidence on those issues relevant to the discovery, and/or that the court make a determination of the issues against the plaintiffs. Defendant also

---

[1] Record document number 58. Defendant filed a reply memorandum. Record document number 61.

[2] Record document number 37, ruling issued August 22, 2014.

sought additional attorney fees and costs.

Defendant maintained that the Terrebonne Parish NAACP, (hereafter, "Parish NAACP") continued to fail to fully and completely respond to Interrogatory Nos. 1 through 5, and Requests for Production Nos. 2 through 8. These interrogatories and document requests generally sought the following information and documents from the Parish NAACP: names of its members and lists of its members; the resources, actions and advocacy it had devoted to changing to district-based voting; the names, addresses and dates of birth of black registered voters who reside in an area of the parish that could comprise a majority of the voting age population; any documents containing recommendations by the Louisiana Supreme Court through the Louisiana Judicial College to add a sixth seat to the 32nd Judicial District Court; written and audio recordings of meetings; financial, tax and banks records and reports; identification of all judges and their race elected in Terrebonne Parish since 1822.

With regard to individual plaintiffs Rev. Vincent Fusilier, Sr., Lionel Myers, Daniel Turner, and Wendell Desmond Shelby, Jr., the defendant argued that the supplemental answers to Interrogatory No. 2 (Shelby) and Interrogatory Nos. 3, 9 and 10 remain deficient.[3] These interrogatories sought the following information

---

[3] Interrogatory No. 2 to Shelby and Interrogatory No. 3 to the other three individual plaintiffs are the same. As to all four
(continued...)

from the plaintiffs: (1) descriptions of the boundaries and all precincts included in the area of the parish in which they reside that could constitute a majority black single member district that would remedy the alleged Section 2 and constitutional violations; (2) the rationale they claim the defendant has put forward for maintaining an at-large method of electing judges for the 32nd Judicial District, as alleged in paragraphs 80 and/or 81 of the complaint; and (3) a description of any and all actions or failures to act by the defendant which the plaintiffs contend violate Section 2 of the Voting Rights Act, the Fourteenth and Fifteenth Amendments and 42 U.S.C. § 1983.

**Analysis**

**Discovery directed to the Terrebonne Parish NAACP**

**Interrogatory No. 1 and Request for Production No. 3:**

Through these discovery requests the defendant sought information and documents containing the names of the Parish NAACP members.

According to the memoranda and deposition testimony of Jerome Boykin, president of the Parish NAACP, he understands he could not provide the discovery based on a judge's ruling in another case and directions from the NAACP national office. Nevertheless, in its September 5, 2014 Third Supplemental Response [to] Interrogatory

---

[3](...continued)
individuals, Interrogatory Nos. 9 and 10 are the same.

No. 1 and Third Supplemental Response [to Request for Production] No. 3, the Parish NAACP responded, citing Rule 33(d)(2), Fed.R.Civ.P., that upon contacting counsel, the defendant could inspect the membership lists at the Parish NAACP office in Houma, Louisiana.[4]  In response to the document request, the plaintiff also noted that the documents produced which related to meeting minutes also provided the names of members.

Defendant argued that the Parish NAACP willfully disobeyed the August 22, 2014 discovery order.  Plaintiff NAACP argued, however, that its supplemental answer and response were sufficient because the membership information/lists were provided for inspection in accordance with the applicable procedural rules.  Yet, the defendant never contacted counsel for the plaintiffs to arrange an inspection.

Plaintiff's argument is persuasive.  The discovery ruling did not foreclose the plaintiffs from making the relevant documents and information available for inspection and copying by the defendant, as permitted by Rules 33 and 34.  Thus, it was not reasonable for the defendant to claim that the Parish NAACP refused to obey the ruling with respect to Interrogatory No. 1 and Request for Production No. 3, and to not contact counsel for the plaintiffs to

---

[4] Record document number 50-2, p. 52, 64-65 (the third supplemental response to this document request is styled as a response to Interrogatory No. 3, but it is included in the section which responds to Document Request No. 3).

4

arrange a date and time to inspect/copy the documents at the Parish NAACP office in Houma. In these circumstances there is no basis to impose on the Parish NAACP any of the severe sanctions urged by the defendant.

**Interrogatory No. 4:**

In this interrogatory the defendant asked the Parish NAACP to list the members of the organization - name, address and date of birth - who are the numerous black registered voters alleged in paragraph 12 of the Complaint that reside in an area of the parish in which Black voters could comprise a majority of the voting age population. The name of the four individual plaintiffs, their addresses and dates of birth were stated in the answer, and the Parish NAACP also generally stated that its membership included other individuals who lived in an area of the parish in which black voters could comprise a majority of the voting age population. In his deposition Boykin testified that he could have named his mother, other family members, and other people who he knew who lived in the district but did not do.

Defendant argued that the Parish NAACP's Third Supplemental Response [to] Interrogatory No. 4[5] and Boykin's deposition testimony[6] show that, despite the ruling, additional information could have been -but was not- provided. Plaintiff maintained that

---

[5] *Id.* at 59-60.

[6] Record document number 50-7, Exhibit 18.

5

given the case law and its allegations, information about the four individual plaintiffs was a sufficient response.

Boykin's deposition indicates that he could have provided some undetermined number of additional names and information. However, it does not appear that there would have been a large number of additional names. Since the defendant has yet to examine the membership documents and information at the NAACP office, the defendant will not be prejudiced if he obtains whatever additional names and information Boykin can provide, and has that information when he inspects the records. Ordering the Parish NAACP to provide a supplemental answer is the only action called for with regard to this interrogatory.

**Interrogatory Nos 2, 3 and 5:**

Collectively, these interrogatories asked the Parish NAACP to describe the actions and resources it devoted to securing a legislative solution at the state level for its goal of district-based voting in the 32nd Judicial District. Defendant essentially argued that a serious sanction is justified, such as denying the Parish NAACP's standing to assert the claim, because Boykin's deposition shows that the supplemental answers provided after the ruling were not complete.

Review of the record shows that in its September 7 supplemental answers some additional information was provided, and the Parish NAACP complied with the ruling by removing all of its

6

objections. After Boykin's deposition revealed additional information, the interrogatory answers were again supplemented. Therefore, the defendant's argument for the severe sanction of striking the plaintiff's standing, or making a finding on the issue of standing against the Parish NAACP, is not warranted.

**Request for Production No. 2:**

This document request sought documents related to allegations in paragraph 73 of the Complaint concerning recommendations made by the Louisiana Supreme Court, through the Judicial Council, regarding the number of seats in the 32nd Judicial District.

Review of the parties' memoranda and exhibits shows that despite the Parish NAACP's delay in correcting its error and clarifying its response to this document request, it ultimately remedied the problems and has now provided all the documents it has that are responsive to the request. Thus, with regard to this request for production, the record does not support imposition of any non-monetary sanctions against the Parish NAACP.

**Request for Production Number 4:**

This request sought documents consisting of minutes, notes, memoranda, recordings, summaries, writings or records of any kind of the meetings of the Parish NAACP.

Review of the parties' arguments and exhibits shows that pursuant to the court's ruling, the Parish NAACP provided a Third Supplemental Response [to] Interrogatory No. 4 on September 5, 2014

7

with documents a the Bates range of 0284 to 0345.[7]  Furthermore, the NAACP has continued to search for records of its meetings and provided additional documents in supplemental responses on September 26 and October 19.  With regard to recordings, it appears from Boykin's deposition that despite his awareness of the request for any recordings, the September 5 supplemental responses did not disclose their existence or provide them.  Nevertheless, on October 7, promptly after the deposition, the recordings were the subject of a supplemental response and they were made available for inspection and copying.  Thus, they have been available to the defendant for more than three months before this motion was filed.  In these circumstances there is no basis impose any of the severe sanctions suggested by the defendant.

**Request for Production Nos. 5,6 and 7:**

These document requests called for the Parish NAACP to produce its financial reports, bank records, and tax information/returns.

Once again, the record shows that after the court issued its discovery ruling the Parish NAACP withdrew its objections and privilege claims to these document requests and provided substantive responses and financial records to the defendant.  After Boykin's deposition the Parish NAACP supplied more financial records.  According to the Parish NAACP it has made an exhaustive search and at this point has given the defendant all of the

---

[7] *Id.* at 66.

documents in its possession, custody or control. Therefore, as to any financial records other than tax returns, there is no basis to order additional production or sanctions.

However, with regard to the tax returns the defendant's argument has merit. Boykin testified that beginning in 2009 the national organization took on the task of filing the local associations' returns. Boykin did not indicate that the returns could not be obtained from the NAACP's national office. Thus, the Parish NAACP's tax returns are reasonably accessible to it and it will be required to obtain them and provide them to the defendant. As to any tax returns filed before 2009, if the defendant still wants copies of those tax returns, he can provide an authorization to release copies of those tax returns directly to him, such authorization to be signed by the appropriate individual with the Parish NAACP.

**Request for Production Number 8:**

This request asked the Parish NAACP to produce documents supporting the allegation that since 1822 the race of all individuals elected to the 32nd Judicial District Court was white. Defendant asserted that subsequent to the court's discovery ruling, the Parish NAACP still did not provide relevant documents. Plaintiff stated that it has produced all the documents in its possession, including newspaper articles, that are responsive to this request. In addition, it asserted that it has also produced

9

an expert report with relevant historical election information.

Given the plaintiff's representation that all responsive documents have been provided, and also considering the existence of the expert report, there is no basis to order any further production in response to this document request. As the litigation proceeds, if it is revealed that despite its representation the Parish NAACP has not provided all of its documents responsive to this request, or to any other request for production, the defendant can pursue the remedies available under Rule 37(c)(1), Fed.R.Civ.P.

**Discovery directed to Individual Plaintiffs**

**Interrogatory No. 2 (Shelby) and Interrogatory No. 3 (Fusilier, Myers and Turner):**

Defendant asked the plaintiffs to describe the area of the parish they contend would constitute a single member majority black voting district that would remedy the alleged Voting Rights Act and constitutional violations. Each of the individual plaintiffs provided the same answer in their Third Supplemental Response [to] Interrogatory No. 2, answering as follows:

> Based upon Individual Plaintiff Fusilier's information and belief, the boundaries of a potential remedial majority-minority district for the 32nd Judicial Court could include the east side of Houma (the Mechanicsville area) and west side of Houma (Stovall Street). The district would extend west and north of Houma and include parts of the unincorporated communities of Gray and Schriever in the north end of the Parish. That potential district encompasses the communities of interest in current single-member districts 1 and 2, which elect

> Black representatives to the Parish School Board and Parish Council.
> The 2014 precincts included in the boundaries of that potential remedial majority minority district for the 32nd Judicial Court include all or parts of precincts 1, 5, 7, 8, 20, 23, 25, 31, 33, 34, 35, 36, 46, 48, 49, 52, 65, 66, 67, 68, 71, 72, 74, 78, 80, 95, 103, 109, 111, 115, 118.[8]

Although the supplemental answer does not describe the area strictly in terms of streets or waterways, the answer does list the precincts and delineate the area with enough specificity for the defendant to locate the general perimeter of the proposed district on a map. The specific information provided in the supplemental answer, along with the expert report that is now available, make it unnecessary to require the plaintiffs to provide any more details in their answer to this interrogatory.

**Interrogatory Number 9 (Fusilier, Myers, Turner and Shelby):**

Defendant asked each plaintiff to describe the rationale they alleged, in paragraphs 80 and/or 81 of the Complaint, that the defendant put forward for maintaining the at-large method of electing members for the 32nd Judicial District. Each of the plaintiffs provided the same answer in the Third Supplemental Response [to] Interrogatory No. 9.[9] Defendant argued that the plaintiffs violated the discovery ruling because the supplemental

---

[8] Record document number 50-2, pp. 3, 16, 29, 41-42. Only Fusilier's answers are provided, because each of the plaintiff's provided the same substantive answer to these interrogatories.

[9] Record document number 50-2, pp. 10-11, 23-24, 36-37, 47.

11

answer is not responsive, since it does not specifically refer to or designate one of the rationales alleged in paragraph 80 of the Complaint.

Defendant's argument is unpersuasive.  Essentially, the defendant's argument is that the plaintiffs should be sanctioned for not providing some other answer to Interrogatory No. 9 simply because the plaintiffs' answer does not match any of the rationales alleged in paragraph 80.  However, on its face the supplemental answer is not deficient.  Plaintiffs complied with the ruling by dropping their objections and providing a substantive answer to the question.  The fact that the defendant believes the answer should refer to one of the rationales stated in paragraph 80 does not make the answer insufficient.  Defendant can take the supplemental answer as it is and use it in what ever manner he believes will support his defense.  But the defendant has not shown that any additional sanction or discovery order is warranted.

**Interrogatory Number 10 (Fusilier, Myers, Turner and Shelby):**

Defendant asked the plaintiffs to describe any and all actions and failures by him they allege violate Section 2, the constitution and § 1983.  Each of these plaintiffs provided the same answer in the Third Supplemental Response [to] Interrogatory No. 10.[10]  Defendant argued that the plaintiff's answer provided after the discovery order remains deficient because it only refers to his

---

[10] Record document number 50-2, pp. 12, 25, 38, 48-49.

role in carrying out elections, and fails to set forth any specifics as to what actions or failures to act violated the Voting Rights Act or the constitution.

Review of the plaintiffs' Third Supplemental Response shows the plaintiffs did not simply refer to the defendant's role in elections. Plaintiffs complied with the discovery ruling by dropping their previous objections and non-responsive answer, and provided a substantive answer to the question. There is no basis to impose any sanction or order the plaintiffs to provide another supplemental answer to Interrogatory Number 10.

## Conclusion

None of the severe sanctions permitted under Rule 37(b)(2)(A), Fed.R.Civ.P., are justified. The record evidence shows a willful refusal by the plaintiffs to obey the court's discovery ruling as to some discovery requests, and as to others the plaintiffs were not as thorough and attentive in making their discovery responses as they should have been. Their conduct resulted in some delay in the defendant obtaining discoverable information and documents, and filing another motion. In these circumstances the plaintiffs should pay the defendant's reasonable expenses incurred in filing this motion. Review of the defendant's motion and memoranda supports an award of the same amount awarded in connection with filing the Motion to Compel and for Sanctions - $800.00. Other, more severe sanctions are not warranted at this time.

Accordingly, the Motion for Sanctions under FRCP 37(b) for Not Obeying a Court Order filed by defendant Tom Schedler, in his official capacity as Louisiana Secretary of State, is granted in part. In accordance with the above, plaintiff Terrebonne Parish Branch NAACP shall serve another supplemental answer to Interrogatory No. 4, and a another supplemental response to Request for Production No. 6, within 14 days. Also within 14 days, pursuant to Rule 37(b)(2), the plaintiffs shall pay to the defendant his reasonable expenses in the amount of $800.00.

The remaining aspects of the defendant's motion are denied.

Baton Rouge, Louisiana, April 27, 2015.

*signature*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE