IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TERREBONNE PARISH BRANCH NAACP, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>PIYUSH ("BOBBY") JINDAL, the GOVERNOR of the STATE OF LOUISIANA, in his official capacity, *et al.*,<br><br>*Defendants*. | Civil Action. No. 3:14-cv-69-JJB-SCR |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO CONDUCT *DAUBERT* HEARING CONCERNING
PLAINTIFFS' PROPOSED EXPERTS AND EVIDENCE**

Plaintiffs, Terrebonne Parish Branch NAACP, Reverend Vincent Fusilier, Sr., Lionel Myers, Wendell Desmond Shelby, Jr., and Daniel Turner (collectively, "Plaintiffs"), respectfully submit this Response in Opposition to Defendants'[1] Motion to Conduct *Daubert* Hearing Concerning Plaintiffs' Proposed Experts and Evidence ("Motion"). Doc. 86.

**INTRODUCTION**

Defendants ask this Court to conduct a hearing to determine whether the opinions in the supplemental reports of Plaintiffs' experts, William S. Cooper and Dr. Allan Lichtman, are "proper and reliable" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 86 at 2. However, Defendants do not make any *substantive* critiques sufficient to warrant such a hearing. Having failed to engage in any meaningful examination of the scope and bases of these experts' opinions when expert discovery was open months ago, Defendants now do not

---

[1] Defendants are Piyush ("Bobby") Jindal, the Governor of the State of Louisiana, in his official capacity, and James D. ("Buddy") Caldwell, the Attorney General of the State of Louisiana, in his official capacity. Plaintiffs also filed suit against Tom Schedler, the Secretary of State, in his official capacity, but subsequently voluntarily dismissed him as a defendant in this action. Doc. 69.

1

challenge the qualifications of Cooper or Dr. Lichtman, or the relevance or reliability of their opinions. As Defendants acknowledge, Doc. 86 at 1, they make the same arguments that they raised in their separate and untimely motion to strike, which essentially contends that the supplemental reports are *procedurally* improper. *See generally* Docs. 84, 84-1. Those arguments are meritless and do not justify a *Daubert* hearing. Defendants also ask this Court to exclude the supplemental reports of Cooper and Dr. Lichtman pursuant to Federal Rule of Evidence ("FRE") 403. Docs. 86 at 2, 86-1 at 8. Again, Defendants merely repackage the same arguments that were made in their motion to strike. *See generally* Docs. 84, 84-1. Because Defendants' contentions are wholly unrelated to FRE 403, they also are without merit and should be rejected.

## BACKGROUND

Plaintiffs contend that Defendants' use of at-large voting for the 32nd Judicial District Court ("32nd JDC"), which is coterminous with Terrebonne Parish ("Terrebonne"), has operated as a wall of exclusion, denying Plaintiffs their right to elect their preferred candidates for the 32nd JDC in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 ("Section 2"), and the Fourteenth and Fifteenth Amendments of the U.S. Constitution. Doc. 1 at 1.[2]

---

[2] To succeed on their claims, Plaintiffs must satisfy three preconditions under *Thornburg v. Gingles*, 478 U.S. 30 (1986): (1) that the voting-age Black residents of Terrebonne are sufficiently numerous and geographically compact to form a majority of the voting-age population in a single-member district to elect one of five members to the 32nd JDC (*Gingles* one); (2) that Black residents' voting patterns are politically cohesive in elections involving Terrebonne voters (*Gingles* two); and (3) that bloc voting by other members of the electorate usually defeats Black-preferred candidates (*Gingles* three). *See id.* at 50-51. *Gingles* one is usually proven by developing, with a demographer's expert assistance, illustrative redistricting plans. *See Clark v. Calhoun County*, 88 F.3d 1393, 1406 (5th Cir. 1996) ("Plaintiffs typically attempt to satisfy [*Gingles* one] by drawing hypothetical majority-minority districts."). *Gingles* two and three are established by evidence of racially polarized voting ("RPV") analyzed by an expert social scientist and/or historian. *Clark v. Calhoun County*, 21 F.3d 92, 96 (5th Cir. 1994).

Apart from satisfying the three *Gingles* preconditions, Plaintiffs also must demonstrate, under the totality of circumstances, that "a challenged election practice has resulted in the denial or abridgment of the right to vote based on color or race," also with expert assistance from a political scientist and/or historian. *Chisom v. Roemer*, 501 U.S. 380, 394 (1991); *see* 52 U.S.C. § 10301(b). Nine factors (known as "Senate Factors" or "SFs") inform this inquiry, including: SF 1 (history of voting discrimination); SF 2 (RPV); SF 5 (effects of socioeconomic discrimination on minority political participation); and SF 7 (lack of minority electoral success). *See Gingles*, 478 U.S. at 36-38. With particular respect to their constitutional discrimination claims, Plaintiffs use the expert assistance of a historian to analyze non-exhaustive factors that guide the circumstantial evidence inquiry, including a historical background of discrimination identified in *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-68 (1977).

On January 23, 2015, in accordance with the Amended Scheduling Order ("Scheduling Order") in this case, *see* Doc. 46 at 1-2, Plaintiffs timely produced the report of Cooper, their expert demographer. *See* Ex. 1 (Cooper Decl.). In his 29-page original report, Cooper analyzed the demographics of Terrebonne and discussed the illustrative redistricting plan (the "*Illustrative Plan*") that he developed to demonstrate the feasibility of a five-district plan for the 32nd JDC that would include a majority-Black district. *See generally id*. Cooper explained that the *Illustrative Plan* complies with various traditional redistricting principles ("TRPs"), including compactness, contiguity, maintaining communities of interest, one person, one vote, and non-dilution of minority voting strength. *Id.* ¶¶ 40-46.

Since 1986, Cooper has developed state and local electoral plans for at least 700 jurisdictions in about 40 states, including in Louisiana. *See id.* ¶¶ 3, 8, Ex. A. He has testified at trial as an expert witness on redistricting and demographics in federal courts in about 35 voting rights cases. *See id.* ¶ 2. Two federal courts recently granted summary judgment on *Gingles* one based, in part, on his testimony. *See id.* ¶ 7; *see also Montes v. City of Yakima*, 40 F. Supp. 3d 1377, 1390-1401 (E.D. Wash. 2014); *Pope v. County of Albany*, No. 11-736, 2014 WL 316703, at *12-13 (N.D.N.Y. Jan. 28, 2014).

On January 23, 2015, Plaintiffs also timely produced the report of their expert historian, Dr. Lichtman. *See* Ex. 2 (Lichtman Rep.). In his 78-page original report, Dr. Lichtman discussed, among other things, the facts relevant to the nine Senate Factors, including: SF 1 (history of voting discrimination); SF 2 (RPV); SF 5 (effects of socioeconomic discrimination on Black political participation); and SF 7 (lack of Black electoral success). *See id.* at 7-77.

Dr. Lichtman is an expert in political history, political analysis, and historical and statistical methodology. He has published numerous scholarly works and served as a consultant

or expert witness in more than 80 voting and civil rights cases. *Id.* at 5-7. A three-judge court in a Voting Rights Act case involving Texas redistricting cited Dr. Lichtman's work in finding intentional discrimination against minority voters. *See id.* at 7 (referencing *Texas v. Holder*, 887 F. Supp. 2d 133 (D.D.C. 2012)). Dr. Lichtman has served as a consultant or expert witness numerous times for state and local jurisdictions, including Louisiana. *Id.*

Following these disclosures, the parties agreed to schedule the depositions of Cooper and Dr. Lichtman for May 7, 2015, and May 22, 2015, respectively. *See* Ex. 3(Email from Ms. Freel, Apr. 2, 2015, at 10:29 a.m.); *see also id.* Ex. 4 (Email from Ms. Aden, Apr. 29, 2015, at 10:48 a.m.). On May 7, 2015, Defendants deposed Cooper for approximately 30 minutes. *See* Ex. 5 (Cooper Dep.). During the deposition, Cooper twice identified the TRPs that he considered in developing the *Illustrative Plan*, but counsel for Defendants inexplicably chose not to ask any follow-up questions. *See generally id.*[3] On May 14, 2015, Defendants canceled the deposition of Dr. Lichtman and did not seek to reschedule it. Ex. 3 (Email from Ms. Aden, May 15, 2015, at 10:19 p.m.).

On June 22, 2015—prior to the close of expert discovery, *see* Doc. 46 at 2, and after the last deposition of Defendants' experts on June 5, 2015—Plaintiffs timely produced the supplemental expert reports of Cooper and Dr. Lichtman. *See* Ex. 6 (Cooper Supp. Decl.); Ex. 7 (Lichtman Supp. Rep.). In his 8-page supplemental report, Cooper responded to the argument of Defendants' proffered experts that the *Illustrative Plan* does not comply with TRPs and that race predominated in its development. *See generally* Ex. 6 (Cooper Supp. Decl.). In his 14-page

---

[3] Counsel for Defendants asked Cooper: "[W]hat redistricting principles did you use when you prepared your plan?" Ex. 5 at 30:3-4 (Cooper Dep.). In response, Cooper stated that he "took into consideration all of the [TRPs] that [he] would normally use for any redistricting plan," including compactness, contiguity, one person, one vote, communities of interest, and non-dilution of minority voting strength. *Id.* at 30:5-16. Counsel for Defendants did not ask any follow-up questions. *See generally id.* Near the end of the deposition, counsel for Defendants asked Cooper whether he also "look[ed] at race as a factor." *Id.* at 34:8-9. Cooper stated that he "took into account race in developing the plan . . . while also taking into account all of the other [TRPs]" that he had mentioned. *Id.* at 34:10-24. Once again, counsel for Defendants did not ask Cooper any follow-up questions. *See generally id.*

4

supplemental report, Dr. Lichtman responded to the arguments of Defendants' proffered experts regarding the facts relevant to the nine Senate Factors that he analyzed in his report and their silence with respect to his analysis of intentional discrimination in the maintenance of at-large voting for the 32nd JDC. *See generally* Ex. 7 (Lichtman Supp. Rep.).

## ARGUMENT

Defendants have filed this Motion asking that this Court hold a *Daubert* hearing to determine whether the opinions expressed by Cooper and Dr. Lichtman in their supplemental reports "are proper and reliable." Doc. 86 at 2. Defendants also ask that the Court exclude these opinions under FRE 403. *Id.* Both requests are meritless.

### A. Defendants Have Failed to Demonstrate the Need for a *Daubert* Hearing.

"In *Daubert*, [the Supreme Court] held that [FRE] 702 imposes a special obligation upon a trial judge 'to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). A district court enjoys "broad latitude when it decides how to determine reliability." *Id.* at 142. This includes when it "decide[s] whether or when special briefing or other proceedings are needed to investigate reliability." *Id.* at 152. Thus, a district court is not required to conduct a *Daubert* hearing to evaluate the admissibility of an expert opinion. *See, e.g.*, *United States v. Hoang*, 285 F. App'x 133, 136 (5th Cir. 2008) ("No separate hearing is necessary."); *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002) ("District courts are not required to hold a *Daubert* hearing before ruling on the admissibility of [expert testimony]."); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) ("[T]he district court is not required to hold an actual hearing to comply with *Daubert*."); *Kirsten v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998) ("We have not required that the *Daubert*

5

inquiry take any specific form . . . ."); *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997) ("*Daubert* does not mandate [an evidentiary hearing].").

Defendants have failed to demonstrate that a *Daubert* hearing is warranted. "To trigger a *Daubert* inquiry, an expert's testimony or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 149). Defendants have not challenged the qualifications of Cooper or Dr. Lichtman, the relevance of their testimony, or the reliability of their opinions. *See generally* Doc. 86-1. Indeed, given Defendants' failure to engage in any probing examination of Cooper's and Dr. Lichtman's analysis, Defendants' Motion does not contain any *substantive* critiques of their opinions. *See generally id.* Instead, as Defendants concede, *see id.* at 1, their Motion uses the same arguments that were made in their separate motion to strike the supplemental reports of Cooper and Dr. Lichtman—namely, that it was *procedurally* improper for Cooper and Dr. Lichtman to provide supplemental reports on June 22, 2015, in response to the opinions of Defendants' proffered experts. *See generally* Doc. 84. Those arguments are meritless for the reasons set forth in Plaintiffs' separate response in opposition to that motion.[4] And, any procedural criticisms of the supplemental reports are irrelevant to their

---

[4] Indeed, contrary to Defendants' suggestion, Doc. 86-1 at 2, 4-6, it is entirely proper for an expert, pursuant to Federal Rule of Civil Procedure ("FRCP") 26(e)(1), to supplement his report "in response to questions or challenges to [his] opinion raised by the opposing party." *Charles v. Sanchez*, No. 13-cv-193, 2015 WL 808417, at *9 (W.D. Tex. Feb. 24, 2015); *see also In re Enron Corp. Sec. Derivative & ERISA Litig.*, No. H–01–3624, 2007 WL 5023541, at *8 (S.D. Tex. Feb. 1, 2007); *Estate of Vaughan v. KIA Motors Am., Inc.*, No. 3:05-cv-38BS, 2006 WL 1806454, at *2 (S.D. Miss. June 29, 2006) ("Ordinarily, . . . a plaintiff will choose to use the same expert that [the] plaintiff originally designated to rebut the defendant's expert, *in which case . . . the plaintiff's expert can simply supplement his report as required by Rule 26(e)(1).*") (emphasis added).

Also contrary to Defendants' suggestion, Doc. 86-1 at 2, 4-6, "supplementation of an expert report is [not] limited to information acquired after the submission of the initial report." *Talbert v. City of Chicago*, 236 F.R.D. 415, 422 (N.D. Ill. 2006). In 2007, FRCP 26 was amended to confirm that supplementation can be based on information "available at the time of the initial disclosure." Fed. R. Civ. P. 26 advisory committee's note; *see also Wright v. Liberty Mut. Fire Ins. Co.*, No. 06-cv-351, 2009 WL 3334822, at *1-2 (D. Colo. Oct. 13, 2009) (rejecting the argument that supplementation of expert report is "limited to after-acquired information").

Moreover, contrary to Defendants' suggestion, Doc. 86-1 at 2, 6, it was not improper or otherwise untimely for Plaintiffs to provide the supplemental expert reports on June 22, 2015, the end of expert discovery. The

6

qualifications as experts or the relevance or reliability of their opinions. A *Daubert* hearing is not warranted.

Defendants complain that "the information provided in the Plaintiffs' [supplemental reports] are currently unscreened and without verification." Doc. 86-1 at 8. This complaint reveals that Defendants are attempting to ***use a Daubert hearing to make an end run around their failure to conduct expert discovery when they had the opportunity to do so***. Indeed, Defendants "could have examined [Cooper and Dr. Lichtman] to [their] heart's content" about the scope and bases of their opinions, including their reactions to the opinions of Defendants' proffered experts, while expert discovery was ongoing. *Foreman v. Am. Road Lines*, 623 F.

---

Scheduling Order clearly contemplated the possibility of supplemental expert reports up until the close of expert discovery on that date. *See* Doc. 46 at 2 (providing that "[e]xpert discovery, *including* depositions of expert witnesses, shall be completed by June 22, 2015"); *see also Barnes v. District of Columbia*, 289 F.R.D. 1, 12 (D.D.C. 2012) (rejecting the argument that expert reports produced "on the day of the deadline" were untimely). Moreover, Plaintiffs' supplementation was (1) nearly six months *before* the December 21, 2015 deadline for the proposed pretrial order, *see* Doc. 46 at 2; and (2) within 17 days of the last deposition of Defendants' experts on June 5, 2015. *See* Fed. R. Civ. P. 26(e) (supplementation of expert reports must be made "in a timely manner" and no later than "the time the party's pretrial disclosures . . . are due").

Further, contrary to Defendants' misrepresentations, the supplemental reports do not exceed the scope of Cooper's or Dr. Lichtman's original reports. Doc. 86-1 at 2, 4-6. Cooper's original report specifically discussed the TRPs that he considered in developing the *Illustrative Plan*. *See* Ex. 1 ¶¶ 40-46 (Cooper Decl.). In his supplemental report, Cooper merely responded to the criticisms of Defendants' proffered experts by elaborating on his prior opinion that the *Illustrative Plan* adheres to these TRPs (*e.g.*, by confirming the geographical compactness of the illustrative remedial district using quantitative measures of compactness known as Reock and Polsby-Popper scores). Cooper's "original . . . theory remains unchanged and his ultimate conclusions do not differ." *Charles*, 2015 WL 808417, at *9.

Defendants complain that Cooper's supplemental report responds to the opinions of Defendants' proffered experts that race predominated in the *Illustrative Plan*. Doc. 86-1 at 5. However, to satisfy Plaintiffs' burden, Cooper was *not* required to opine on whether race was the predominant factor in his original report. Binding Fifth Circuit precedent holds that an equal protection inquiry (regarding whether race is the predominant factor in a redistricting plan) is irrelevant in the context of *Gingles* one. *See Clark*, 88 F.3d at 1406-07. Thus, it was entirely appropriate for Cooper *not* to address this subject in his original report. (Consistent with the case law, Plaintiffs have moved to exclude Defendants' proffered expert testimony on this subject pursuant to FRE 702. *See* Docs. 87, 89.). Cooper was only required to opine, as he did as discussed *supra*, that the *Illustrative Plan* adheres to the TRPs.

As for Dr. Lichtman, Defendants acknowledge that he was asked to opine on the totality of circumstances inquiry (that Defendants erroneously call "prong 2 of *Gingles*") for purposes of Plaintiffs' Section 2 and constitutional claims. *See* Doc. 86-1 at 5. As noted above, *see supra* note 2, this inquiry is informed by, among other things, nine Senate Factors, including: SF 2 (RPV); SF 5 (effects of socioeconomic discrimination on minority political participation); and SF 7 (lack of minority electoral success). *See Gingles*, 478 U.S. at 36-38. By responding to the opinions of Defendants' experts on these factors, including RPV, Dr. Lichtman did not "exceed[] the scope of [his] first report." Doc. 86-1 at 5. Finally, contrary to Defendants' suggestion, *id.* at 6, Dr. Lichtman did not opine on *Gingles* one (*i.e.*, the numerosity and compactness of the Black voting-age population in Terrebonne) in his original report or supplemental report. *See* Ex. 2 (Lichtman Rep.); Ex. 7 (Lichtman Supp. Rep.).

7

Supp. 2d 1327, 1331 (S.D. Ala. 2008). Inexplicably, however, Defendants declined to do so. Despite having 7 hours under the FRCP to depose Cooper, Defendants decided to question Cooper for approximately 30 minutes. *See* Ex. 5 (Cooper Dep.). During those 30 minutes, Cooper twice identified the TRPs that he considered in developing the *Illustrative Plan*, but Defendants chose not to ask *any* follow-up questions. Defendants also inexplicably canceled Dr. Lichtman's May 22, 2015 deposition, thereby forgoing the opportunity to scrutinize his 78-page report—which encompassed far more than Louisiana's "past history of discrimination, poverty rates, census data, etc." to which Defendants may stipulate—and his reactions to the opinions of Defendants' proffered experts. *Compare* Ex. 2 (Lichtman Rep.) *with* Doc. 86-1 at 5.[5] Moreover, after receiving the supplemental reports, Defendants never contacted Plaintiffs to request that Cooper and Dr. Lichtman be made available again for deposition. Had Defendants contacted counsel for Plaintiffs, Plaintiffs would have consented to a timely request to reopen discovery. Defendants now attempt to make up for their lack of diligence during the five months of expert discovery by asking for the opportunity to examine Cooper and Dr. Lichtman in the context of a *Daubert* hearing. "A *Daubert* hearing is not a discovery proceeding." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 356 (5th Cir. 2007). Thus, Defendants' request for such a proceeding is inappropriate.

### B. Defendants Have Failed to Demonstrate that the Supplemental Reports of Cooper or Dr. Lichtman Should Be Excluded Under FRE 403.

Defendants also ask that the supplemental reports be excluded under FRE 403. Doc. 86 at 2. In so doing, Defendants appear to confuse FRE 702 with FRE 403. *See* Doc. 86-1 at 8 (asserting that the supplemental reports "should be denied after the necessary *Daubert* hearing in accordance with [FRE] 403"); *see also id.* at 6 ("Defendants move for a *Daubert* hearing

---

[5] It is, therefore, disingenuous for Defendants to assert that they had "no reason to depose [Dr.] Lichtman" before he submitted his 14-page supplemental report. Doc. 86-1 at 5, 6.

pursuant to [FRE] 403"). In *Daubert*, the Supreme Court construed FRE 702, not FRE 403. *See* 509 U.S. at 588-95.

In any event, Defendants' suggestion that the supplemental reports of Cooper and Dr. Lichtman should be excluded under FRE 403 is meritless. FRE 403 provides that "[t]he court *may* exclude relevant evidence if its probative value is *substantially outweighed* by," for instance, "unfair prejudice," "undue delay," or the "wasting [of] time." Fed. R. Evid. 403 (emphasis added). "[A]pplication of Rule 403 must be cautious and sparing." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979); *see also United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009) (noting that FRE 403 "is an extraordinary measure because it permits a trial court to exclude concededly probative evidence"). The rule "is not designed to . . . 'even out' the weight of the evidence." *McRae*, 593 F.2d at 707. Defendants bear the burden of demonstrating that the evidence should be excluded under FRE 403. "The burden under Rule 403 is on the party opposing admission, who must show that the probative value 'is *substantially outweighed* by the [consideration at issue].'" *See, e.g.*, *United States v. Tse*, 375 F.3d 148, 164 (1st Cir. 2004).

Defendants argue that Plaintiffs acted "unfair[ly]" as a procedural matter in providing the supplemental reports on June 22, 2015, and that the supplemental reports will be prejudicial because "the information [they contain] has not been tested." Doc. 86-1 at 6-7. Defendants misapprehend the type of unfair prejudice cognizable under FRE 403. "Unfair prejudice [under FRE 403] means [that the evidence has] an undue tendency to suggest decision on an improper basis, [such as] an emotional one." Fed. R. Evid. 403 advisory committee's note; *see also McRae*, 593 F.2d at 707 (reviewing admission of "gross, distasteful and disturbing" photographs). Defendants do not and cannot suggest that Cooper's and Dr. Lichtman's testimony would lead the Court to render a decision on such an improper basis. *See generally* Doc. 86-1.

9

Defendants also assert that admission of the supplemental expert reports will "cause an undue delay, in violation of [FRE] 403" because Defendants would "likely [need] months" to examine the opinions in these 8- and 14-page supplemental reports. *Id.* at 7. Defendants similarly contend that admission of the supplemental reports would require "considerable amount of time and expense" because Defendants would need to engage in "more discovery." *Id.* Such assertions ring hollow, however, given that Defendants questioned Cooper for only about 30 minutes at his May 7, 2015 deposition and decided *not* to depose Dr. Lichtman, as discussed *supra*. More importantly, these arguments are not contemplated within the concepts of "undue delay" and "wasting [of] time" under FRE 403. The central concern under FRE 403 is that the evidence at issue would needlessly prolong the length of trial—not that trial would be delayed because of additional discovery. *See, e.g.*, *United States v. Smithers*, 212 F.3d 306, 316 (6th Cir. 2000) (holding that the consideration of "undue delay" is similar to that of "waste of time" and that it "encompasses the prolonging of the length of the trial"). Defendants here do not—and cannot— suggest that the supplemental reports would needlessly prolong the length of trial. *See generally* Doc. 86-1.[6] Accordingly, Defendants have failed to establish that the supplemental reports should be excluded under FRE 403.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Conduct *Daubert* Hearing Concerning Plaintiffs' Proposed Experts and Evidence.

---

[6] Defendants have merely incorporated here many of the same arguments that they make in support of their motion to strike the supplemental reports. *See generally* Doc. 84. However, for the reasons set forth in Plaintiffs' separate response in opposition to that motion, their arguments here are meritless. In particular, Defendants' failure to diligently pursue expert discovery while that was ongoing for five months and their decision to wait nearly two months after expert discovery ended before complaining about their purported need for additional discovery demonstrates that any prejudice Defendants claim to suffer at this juncture is "self-inflicted." *Foreman*, 623 F. Supp. 2d at 1330-31. Defendants' claim that trial would need to be pushed back, *see* Doc. 86-1 at 7, also is untenable, given that the pretrial order is not due for another three months on December 21, 2015, and trial is not scheduled to take place for another six months, starting on March 28, 2016. Doc. 46 at 2.

10

This the 11th day of September, 2015.

         Respectfully submitted,

         s/ *Leah C. Aden*
         Leah C. Aden* **
         Victorien Wu*
         Natasha M. Korgaonkar*
         Deuel Ross*
         NAACP LEGAL DEFENSE &
          EDUCATIONAL FUND, INC.
         40 Rector Street, 5th Floor
         New York, NY 10006
         Telephone: (212) 965-2200
         Facsimile: (212) 226-7592
         laden@naacpldf.org
         vwu@naacpldf.org
         nkorgaonkar@naacpldf.org
         dross@naacpldf.org

         *ADMITTED PRO HAC VICE
         **TRIAL ATTORNEY

         Ronald L. Wilson (LSBN 13575)
         701 Poydras Street – Suite 4100
         New Orleans, LA 70139
         Telephone: (504) 525-4361
         Facsimile: (504) 525-4380
         cabral2@aol.com

         Marshall Taylor
         Victor Goode
         *Of Counsel*
         NATIONAL ASSOCIATION FOR THE
          ADVANCEMENT OF COLORED PEOPLE
         4805 Mt. Hope Drive
         Baltimore, MD 21215
         Telephone: (410) 580-5120
         mtaylor@naaacpnet.org
         vgoode@naacpnet.org

         *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing *Plaintiffs' Response in Opposition to Defendants' Motion to Conduct Daubert Hearing Concerning Plaintiffs' Proposed Experts and Evidence* with this Court using the CM/ECF system, which provides notice of filing to all counsel of record.

This the 11th day of September, 2015.

Respectfully submitted,

s/ *Leah C. Aden*