UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERREBONNE PARISH NAACP, ET AL.

VERSUS

PIYUSH ("BOBBY") JINDAL the GOVERNOR
of the STATE OF LOUISIANA, in his official
capacity, ET AL.

CIVIL ACTION

NO. 14-069-JJB-SCR

**RULING**

Before the Court are three motions in limine to exclude testimony of the Defendants' experts in this matter: (1) Motion to Exclude Testimony of Bruce L. Adelson (doc. 87); Motion to Exclude Testimony of Michael Beychok (doc. 88); and (3) Motion to Exclude Testimony of Dr. Ronald E. Weber, filed by the Plaintiffs, Terrebonne Parish Branch NAACP, Reverend Vincent Fusilier, Sr., Lionel Myers, Wendell Desmond Shelby, Jr., and Daniel Turner (collectively "Plaintiffs"). The Defendants, Bobby Jindal ("Jindal") and James D. "Buddy" Caldwell ("Caldwell") (collectively "Defendants") in their official capacities, have opposed the respective motions (docs. 136, 137, 135). For the reasons stated herein, the Motion to Exclude Testimony of Bruce L. Adelson (doc. 87) **GRANTED**, and the Motions to Exclude Testimony of Michael Beychok (doc. 88) and Dr. Ronald E. Weber (doc. 89) are **DEFERRED** until trial.

I.      **Overview**

This case is a challenge to the use of at-large voting for the 32nd Judicial District Court to dilute Black voting strength, in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments of the U.S. Constitution. Compl. 1, Doc. 1. In order to prevail on the underlying Section 2 vote-dilution claim, Plaintiffs

must establish three preconditions[1] under *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986), and the Senate Factors that inform the totality of circumstances analysis as to whether Black voters in Terrebonne have less opportunity than other members of the electorate to participate in the political process.

The Defendants retained three experts, Bruce Adelson ("Adelson"), Michael Beychok ("Beychok"), and Dr. Ronald E. Weber ("Dr. Weber"), to opine on various aspects of the merits of Plaintiffs' claims, the three *Gingles* preconditions, and the Senate Factors. Plaintiffs have now filed the present motions in limine, seeking to exclude these experts, the reports they produced, as well as their relevant deposition and trial testimony. The Court addresses each of these motions in turn, discussing the relevant background of each expert and the opinions the Plaintiffs have challenged.

The admission of expert testimony is governed by Federal Rule of Evidence ("Rule") 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 establishes that expert testimony is admissible only if: (a) the expert's testimony will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing the admissibility of the testimony. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The "gatekeeping obligation" that a district court has under Rule 702 "applies to all expert testimony," not just scientific testimony. *Kumho Tire Co. v.*

---

[1] The three *Gingles* preconditions are: (1) that the voting-age Black residents of Terrebonne Parish are sufficiently numerous and geographically compact to form a majority of the voting-age population ("VAP") in a single-member district to elect one of five members to the 32nd JDC ("*Gingles* 1"), (2) that Black residents' voting patterns are politically cohesive in elections involving Parish voters ("*Gingles* 2"); and (3) that bloc voting by other members of the electorate usually defeats Black-preferred candidates ("*Gingles* 3"). *See Gingles*, 478 U.S. at 50–51.

*Carmichael*, 526 U.S. 137, 147 (1999). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof at trial are the traditional and appropriate means of attacking shaky but otherwise admissible evidence. *Daubert*, 509 U.S. at 596.

## II.   Motion to Exclude Testimony of Bruce L. Adelson (doc. 87)

### A.  Background

Adelson is a consultant retained to "review and analyze this case and the allegations in the present case." Adelson graduated from law school in 1983 and has been practicing law since then. Adelson's Dep. 52:7-11; 126:24-127:17, Doc. 136-2. Adelson spent seven years in private practice between 1983 and 2000. *Id.* In 2000, Adelson was hired as an attorney by the U.S. Department of Justice ("DOJ"), where he began to work on voting rights matters. Specifically, when he first joined the DOJ, Adelson reviewed submissions for "compliance" with Section 5 of the Voting Rights Act ("Section 5"). *Id.* at 102:18-103:8; *id.* at 162:3-6. During the five years in which he worked on voting matters, Adelson dealt primarily with cases involving Section 5, which uses a different legal standard than Section 2, the provision at issue in this case. *Id.* at 29:22–32:16, 102:21–103:8, 113:13–114:3.

Since leaving the DOJ in 2006, Adelson has been the sole owner and employee of a "law and consulting firm." *Id.* at 83:13–23. According to Adelson, in his capacity as a "consultant," he helps to "assess . . . the strength of . . . case[s]" being brought or contemplated, including "the strength of [a DOJ] letter" against a "target" jurisdiction. *Id.* at 89:23–91:17.

Recently, in another Section 2 case before the Middle District of Louisiana where Adelson was tendered as an expert witness, Chief Judge Jackson remarked, "Ultimately, Mr. Adelson's testimony only minimally aided the trier of fact. The Court most certainly would have scrutinized Mr. Adelson's qualifications and expertise more closely had a *Daubert* motion been

3

presented to the Court, but no party filed such a motion." *Hall v. Louisiana*, No. CIV.A. 12-00657-BAJ, 2015 WL 3604150, at *20 n.11 (M.D. La. June 9, 2015).

In reviewing the Plaintiffs allegations, Adelson employed the same methodology that he used during the five years that he worked as a lawyer at the DOJ more than ten years ago to "evaluat[e] various allegations of racial discrimination under the Voting Rights Act." Adelson's Dep. 136:5–16, Doc. 136-2. Adelson reviewed the evidence given by other potential expert and fact witnesses, applied the legal framework for this case, and opined on the merits of Plaintiffs' claims, including the three preconditions that Plaintiffs must satisfy to establish their Section 2 vote-dilution claim under *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986), and the Senate Factors that inform the totality of circumstances analysis as to whether Black voters in Terrebonne have less opportunity than other members of the electorate to participate in the political process. *See id.* at 36–38. Adelson concluded that "there is no dilution of African-American votes in the 32nd Judicial District Court through the use of an at-large election system for District Court judges within Terrebonne Parish." Expert Report of Bruce L. Adelson 34, Doc. 136-1.

### B.  Discussion

Plaintiffs seek to exclude Adelson's report and testimony on the following grounds: (1) the report and testimony offer legal analyses and conclusions and thus are not helpful to the trier of fact to understand the evidence or to determine a fact in issue; (2) Adelson has no relevant expertise in any field other than the legal framework used in this case, and he does not perform any independent analyses to reach his conclusions; and (3) Adelson lacks the requisite experience to be qualified as an expert witness on Section 2 of the Voting Rights Act. *See* Pls.' Supp. Memo. 9–20, Doc. 87-1. Defendants respond by pointing to Rule 704, which provides that

an expert's opinion "is not objectionable just because it embraces an ultimate issue." According to the Defendants, Adelson makes factual conclusions, not legal conclusions. Dfs.' Opp'n 5, Doc. 136. Adelson "is not telling the Court what result to reach in this case. He makes his own factual conclusion, using the facts available, to form his expert opinion." *Id.* at 7.

The premise of expert testimony is that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. Rule 702; *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986). However, "trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986).

The Court agrees with the Plaintiffs that Adelson's report offers little more than legal conclusions, and thus is not helpful to the trier of fact to understand the evidence or determine a fact in issue. Adelson's report and testimony read like a judicial opinion, setting forth the relevant legal standards and applying the evidence in this case to argue that Plaintiffs' claims fail. Adelson's report does not develop new facts, but instead reviews facts provided by other expert witnesses to evaluate the allegations in this case, and to render his ultimate legal conclusion that Plaintiffs have failed to demonstrate the "dilution of African-American votes in the 32nd Judicial District Court through the use of an at-large election system for District Court judges within Terrebonne Parish." Expert Report of Bruce L. Adelson 34, Doc. 136-1.

While Rule 704 allows an expert to offer an opinion that "embraces an ultimate issue," the Fifth Circuit has cautioned that the Rule "does not open the door to all opinions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). An expert opinion that supplies the factfinder with no information other than the expert's view of how the verdict should read, or

allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence invades the court's province and is irrelevant. *Id.* The District Court "ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986). Here, Adelson's report adopts the opinions and evidence offered by Defendants' other expert witnesses in this case, to arrive at his ultimate legal conclusion that Plaintiffs case fails on the merits.

Moreover, Adelson's report does not make independent factual conclusions or independently develop any facts. An expert may certainly look to other experts' analyses. *See* Fed. R. Evid. 703. However, an expert may not simply gather evidence from other experts to offer an ultimate legal conclusion. *See Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (holding that Rule 704(a) does not allow an expert to render conclusions of law). Adelson's opinion that "there is no vote dilution in the 32nd District," and that "the African-American population is not large and geographically compact enough for a single-member district," are not factual conclusions but rather are the ultimate legal issues in this case. In essence, Adelson brings to the Court nothing more than what the lawyers can offer in argument by telling the Court the legal conclusions to be drawn from the evidence.

In sum, after careful consideration of Adelson's expert report, the Court finds Adelson's report and testimony to be of no assistance in making findings of fact and deciding the issues in the instant case.[2] Accordingly, Plaintiffs' Motion to Exclude Testimony of Bruce Adelson (doc. 87) is **GRANTED**.

---

[2] Having concluded that Adelson's report and testimony is inadmissible based upon the Plaintiffs' first argument, the Court does not address nor make any findings as to the Plaintiffs' other arguments.

**III.     Motion to Exclude Testimony of Michael Beychok** (doc. 88)

**A.  Background**

Beychok is a political consultant retained by Defendants in this case to analyze the campaigns of candidates running in six at-large elections in Terrebonne Parish.[3] Beychok was asked to opine on why Black candidates lost in the five elections that were contested. *See* Expert Report of Michael Beychok 1, Doc. 137-1; Beychok's Dep. 86:8–87:1, Doc. 137-2.

In his report, Beychok identified three primary factors he deemed most important in the outcome of campaigns: (1) the amount of money that the campaign raised and spent; (2) the amount of time that the campaign spent communicating with voters; and (3) the extent to which the campaign recruited volunteers. Expert Report of Michael Beychok 2, Doc. 137-1. He also identified and analyzed other factors such as race, incumbency, age, and political party affiliation. *Id.* at 2, 7. In his deposition, Beychok agreed that race is "certainly a factor," but "money, time, and people" are the "three most important factors because those are the most general factors that influence an election." Beychok's Dep. 123:9–16, Doc. 137-2.

**B.  Discussion**

Plaintiffs seek to exclude Beychok's testimony on the third and fourth elements under Rule 702. Namely, Plaintiffs argue Beychok's testimony is inadmissible because it is not the "product of reliable principles and methods" as required by Rule 702(c), and that he has not "reliably applied the principles and methods to the facts of the case" as required by Rule 702(d). Pls.' Supp. Mem. 7–13, Doc. 88-1.

---

[3] Specifically, Beychok examined the campaigns for the: (1) 2014 Houma City Court election; (2) 2014 32nd JDC election; (3) 2014 City Marshal election; (4) 2011 Tax Assessor election; (5) 1994 32nd JDC election; and (6) 1993 First Circuit Court of Appeals election. Expert Report of Michael Beychok 3–20, Doc. 137-1.

The Court finds that judicial efficiency and economy call for handling these issues at trial. Accordingly, the Plaintiffs' Motion to Exclude Testimony of Michael Beychok (doc. 88) is **DEFERRED** until trial.

### IV.    Motion to Exclude Testimony of Ronald E. Weber (doc. 89)

####      A. Background

Defendants have retained Dr. Weber as an expert[4] to opine on the three preconditions that Plaintiffs must satisfy to establish their vote-dilution claim under *Thornburg v. Gingles*, 478 U.S. 30 (1986). Expert Report of Ronald E. Weber 6–7, Doc. 135-1.

With respect to *Gingles* 1, Dr. Weber opined that, while Black voters in Terrebonne are sufficiently numerous, they are not geographically compact enough to constitute a majority of the voting age population in a single-member district. *Id*. at 8 ¶ 6(2), ¶ 48(2). Dr. Weber examined the illustrative redistricting plan (the "*Illustrative Plan*") prepared by Plaintiffs' expert demographer, William S. Cooper. *Id.* at ¶ 17. Dr. Weber acknowledged that under the *Illustrative Plan*, Black voters form a majority (at 50.81 percent) in one of the five single-member districts, District 1. *See id.* Dr. Weber also acknowledged that District 1 includes the three areas of the Parish that include the highest concentrations of Black voters: Houma, Gray, and Schriever. *See id.* at ¶¶ 16–17. Ultimately, however, Dr. Weber concluded that the "African-American population in Terrebonne Parish is not geographically concentrated enough to be a majority of voters in a judicial sub-district drawn using fair traditional districting principles." *Id.* at ¶ 17.

---

[4] Dr. Weber also was retained to analyze other issues that are not the subject of this *Daubert* motion, including demographic changes in the total population and the voting age population in Terrebonne, changes in the racial composition of registered voters in Terrebonne, and whether any socioeconomic disparities in education, employment, and housing between Black as compared to white residents in Terrebonne result in any differences in voter registration, turnout and/or participation between Black as compared to white voters in the Parish. Expert Report of Ronald E. Weber 7–9, Doc. 135-1.

Specifically, Dr. Weber asserted that the concentrations of Black voters in Houma, Gray, and Schriever are not contiguous, and the shape of District 1 is "odd." *Id.*

As to *Gingles* 2 and 3, Dr. Weber analyzed seven Terrebonne elections held between 1993 and 2014, featuring at least one Black candidate and one white candidate competing against each other (i.e., biracial elections) for an at-large elected position. *See id.* at ¶¶ 30-47. Dr. Weber opined that, while Black voters were cohesive in each of these elections, there was no racially polarized voting in three of the seven elections that he examined. *See id.* at ¶¶ 34, 41, 43. Dr. Weber reached this conclusion by applying a rule that he created, i.e., a "decision rule," with bright-line numerical cutoffs to analyze cohesive voting.[5] *See id.* at ¶ 32.

## B.  Discussion

Plaintiffs argue that Dr. Weber's opinion regarding *Gingles* 1 is inadmissible because "this opinion does not satisfy the basic requirement of reliability under Rule 702." Pls.' Supp. Mem. 9, Doc. 89-1. As to *Gingles* 2 and 3, Plaintiffs seek to exclude Dr. Weber's opinion that voting was not racially polarized in three elections. Pls.' Supp. Mem. 11–16, Doc. 89-1. Plaintiffs argue that Dr. Weber's opinion is neither reliable nor helpful to the trier of fact because Dr. Weber's decision rule is contrary to the legal standard for determining racially polarized voting as set forth by the Supreme Court in *Gingles*, and because the numerical cutoffs that Dr. Weber uses find no support in case law or in any social science.[6] *Id.*

---

[5] Specifically, in a two-person contest, Dr. Weber will find a racial group of voters to be cohesive only if "[the] group's percentage for support for a particular candidate is at least 60 percent of the total vote among all candidates." Weber's Dep. 192:20–193:6, Doc. 135-2. In elections with three or more candidates, Dr. Weber "will first determine whether the top two candidates together garner more than 50 percent of the [racial group's] support." *Id.* at 198:1–11. If that condition is satisfied, then Dr. Weber will only find voter cohesion if, "as between the two of those candidates, one candidate has at least 60 percent of the vote." *Id.*

[6] The Court notes that Dr. Weber's decision rule has received varying judicial treatment. Plaintiffs cite to courts that have rejected Dr. Weber's rule as contrary to the appropriate legal standard set forth in *Gingles.* Pls.' Supp. Mem. 12–15 (citing *Hall v. Louisiana*, No. 12-657, ___ F. Supp. 3d ___, 2015 WL 3604150, at *9 (M.D. La. June 9 2015) (rejecting Dr. Weber's decision rule and stating, "It is of no import . . . whether [Black electoral] defeat is due to less or more than 60% of non-African American voters supporting a single candidate, when the ultimate result is a defeat

The Court finds that judicial efficiency and economy call for handling these issues at trial. Accordingly, the Plaintiffs' Motion to Exclude Testimony of Dr. Ronald E. Weber (doc. 89) is **DEFERRED** until trial.

## V.    Conclusion

For the reasons stated herein, the Plaintiffs' Motion to Exclude Testimony of Bruce L. Adelson (doc. 87) is **GRANTED**. The Plaintiffs' Motion to Exclude Testimony of Michael Beychok (doc. 88) and Motion to Exclude Testimony of Dr. Ronald E. Weber (doc. 89) are **DEFERRED** until trial.

Signed in Baton Rouge, Louisiana, on October 18, 2015.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

of the preferred candidate of African American voters."); *United States v. Village of Port Chester*, 704 F. Supp. 2d 411, 430 (S.D.N.Y. 2010) (rejecting Dr. Weber's "bright-line rule that Dr. Weber conceded was an arbitrary figure that no court has explicitly used and no other expert in the field has adopted"); *Large v. Fremont County*, 709 F.Supp. 2d 1176, 1214–15 (D. Wyo. 2010) ("Gingles would have come out if differently if the Supreme Court had used Dr. Weber's arbitrary threshold because several of the elections in which the Court found polarization to be present did not meet Dr. Weber's standard.")). Meanwhile, Defendants cite other courts that have accepted Dr. Weber's decision rule and his analysis on cohesive voting. *See* Defs.' Opp'n. 134–35 (citing *Clay v. Board of Educ. of City of St. Louis*, 90 F.3d 1357, 1360–62 (8th Cir. 1990) (recognizing and accepting Dr. Weber's analysis); *African-American Voting Rights Legal Defense Fund, Inc. v. Missouri*, 994 F.Supp. 1105, 1117–19 (E.D. Mo. 1997); *France v. Pataki*, 71 F.Supp.2d 317, 327–29 (S.D. NY 1999)).