UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERREBONNE PARISH BRANCH NAACP,
ET AL.

                                    CIVIL ACTION

VERSUS

                                    NO. 14-69-JJB-EWD

PIYUSH ("BOBBY") JINDAL, THE
GOVERNOR OF THE STATE OF
LOUISIANA, IN HIS OFFICIAL CAPACITY,
ET AL.

## RULING ON MOTION TO INTERVENE OF THE TERREBONNE PARISH CONSOLIDATED GOVERNMENT

Before the Court is a Motion to Intervene[1] brought by the Terrebonne Parish Consolidated Government ("TPCG"). The Motion is opposed by Plaintiffs, the Terrebonne Parish Branch NAACP, Vincent Fusilier, Sr., Lionel Myers, Wendell Desmond Shelby, Jr., and Daniel Turner (collectively, "Plaintiffs").[2] TPCG has filed a reply[3] and Plaintiffs have filed a sur-reply.[4] The current defendants in this suit are the Attorney General of the State of Louisiana and the Governor of the State of Louisiana (collectively, "Defendants").[5] Per TPCG's Motion to Intervene, it conferred with counsel for the Defendants, who confirmed that the Defendants have no objection to the granting of this Motion to Intervene.[6] For the reasons set forth herein, TPCG's Motion to Intervene is DENIED.[7]

---

[1] R. Doc. 187.

[2] R. Doc. 188.

[3] R. Doc. 191.

[4] R. Doc. 194.

[5] Plaintiffs originally brought this action against three defendants: Piyush "Bobby" Jindal as Governor of the State of Louisiana in his official capacity; James "Buddy" Caldwell as Attorney General of the State of Louisiana in his official capacity; and Tom Schedler as Secretary of State of Louisiana in his official capacity. Plaintiffs voluntarily dismissed Schedler with prejudice as a defendant in this action. R. Doc. 69.

[6] R. Doc. 187, p. 3.

[7] Magistrate judges may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to intervene is considered a non-dispositive motion." *Johnson v. Qualawash Holdings, LLC*, 2013 WL

## I.      Background

On February 3, 2014, Plaintiffs filed this challenge to the use of at-large voting for the 32nd Judicial District Court (the "32nd JDC") to dilute "Black" voting strength in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. §10301 ("Section 2"), and the Fourteenth and Fifteenth Amendments of the United States Constitution.[8]   The Plaintiffs pray for, *inter alia*, the following relief: (1) a declaration that the at-large method of electing members to the 32nd JDC was adopted and/or maintained with a discriminatory purpose in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the Constitution; (2) a declaration that the at-large method of electing members to the 32nd JDC has the result of denying or abridging the right to vote on account of race or color in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the Constitution; (3) an injunction precluding the Defendants, their successors, and agents from enforcing, administering, implementing, or conducting any future elections to the 32nd JDC under the current at-large method of election; (4) an order setting an immediate and reasonable deadline for the State of Louisiana to enact and adopt a new method of election for the 32nd JDC or alternatively ordering the implementation of an election system for the 32nd JDC; and (5) an order retaining jurisdiction over this action and requiring Terrebonne to obtain preclearance for any and all future changes in voting law impacting the 32nd JDC.[9]

On February 29, 2016, TPCG filed the instant Motion to Intervene.  TPCG explains that it is the parish government of the Parish of Terrebonne and in that capacity, "has substantial

---

3050021, at *2 (W.D. La. June 17, 2013) (citing *S.E.C. v. Koirnman*, 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006)).  *See also, Stephens v. State Farm and Cas. Co.*, 2010 WL 1292719, at *3 (E.D. La. March 8, 2010) ("The portion of Road Home's motion seeking leave to intervene is a non-dispositive matter which I may address by order.").

[8] R. Doc. 1, p. 1.

[9] R. Doc. 1, pp. 22-23.

administrative and fiscal pecuniary interests in its local court system."[10]  TPCG further asserts that

it "will bring to the litigation a special 'local perspective' on the current historical, political, and

demographic factors at issue that are or may not be likely to be presented by Defendants and that

could benefit the court's understanding of the factual and legal merits of Defendants' position."[11]

TPCG asserts that: (1) Section 2 of the Voting Rights Act grants it an unconditional right

to intervene; (2) it may also intervene of right under Federal Rule of Civil Procedure 24(a)(2)

because it claims an interest relating to this matter and is so situated that disposition of the action

may, as a practical matter, impair or impede its ability to protect that interest; and (3) this Court

should exercise its discretion to allow it to permissively intervene under Federal Rule of Civil

Procedure 24(b)(2).[12]

## II.    Law and Analysis

### A.  Timeliness of Motion to Intervene

"Whether leave to intervene is sought under section (a) or (b) of Rule 24, the application

must be timely."  *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).  The timeliness

of a motion to intervene is a matter committed to the sound discretion of the trial court.  *McDonald*

*v. E.J. Lavino*, 430 F.2d 1065, 1071 (5th Cir. 1970).  Timeliness "is not limited to chronological

considerations but 'is to be determined from all the circumstances.'"  *Stallworth v. Monsanto Co.*,

558 F.2d 257, 263 (5th Cir. 1977).  The Fifth Circuit has set forth four factors to consider when

evaluating whether a motion to intervene is timely: (1) the length of time during which the

proposed intervenor should have known of his interest in the case before he petitioned to intervene;

(2) the extent of prejudice that those parties already in the litigation would suffer "as a result of

---

[10] R. Doc. 187, ¶ 2.

[11] R. Doc. 187, ¶ 4.

[12] R. Doc. 187-1.

the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) the extent of prejudice to the proposed intervenor if he is not allowed to intervene; and (4) the existence of "unusual circumstances militating either for or against a determination that the application is timely." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-266 (5th Cir. 1977)).  While the above factors "give structure" to the timeliness analysis, the analysis "remains 'contextual' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.'" *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Sierra Club v. Epsy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Plaintiffs argue that TPCG's proposed intervention is untimely and that Plaintiffs would be prejudiced by the proposed intervention.  Plaintiffs point out that the current parties have completed more than 16 months of fact and expert discovery, and have filed motions to dismiss, *Daubert* motions, and cross motions for summary judgment such that this matter has advanced past initial stages.[13]  Plaintiffs additionally assert that TPCG had "'ample notice of its [purported] interest in the lawsuit'"[14] because Plaintiffs' Complaint received widespread media coverage and that TPCG will not be prejudiced if it is not a party to this case, especially if TPCG participates as an *amicus curiae*.[15]  Finally, Plaintiffs assert that TPCG has provided no explanation or pointed to any "unusual circumstances" justifying its two-year delay in seeking intervention.[16]

---

[13] R. Doc. 188, pp. 2-3.

[14] Citing *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987).

[15] R. Doc. 188, pp. 2-3.

[16] R. Doc. 188, p. 4.

TPCG recognizes that this action was instituted on February 3, 2014 and that this action is set for trial beginning March 13, 2017.[17]  Instead of discussing the four timeliness factors set out above, TPCG asserts that, if leave for intervention is granted, it will "(i) participate in this action on all schedules that have or will be established by the scheduling order for the existing parties; (ii) avoid unnecessary delays or duplication of efforts in areas satisfactorily addressed and represented by the existing Defendants, to the extent possible; (iii) coordinate all future proceedings with the existing Defendants to the extent possible; (iv) not list or call any additional witnesses not listed or disclosed by the existing parties; and (v) not call any expert witnesses other than those listed and disclosed by the present Defendants."[18]  Based on these limitations, TPCG avers that the proposed intervention "will not retard the progress of this action or unduly delay the current trial date fixing and the adjudication of the existing parties' rights."[19]

TPCG does not address Plaintiffs' assertion that it had ample notice of this lawsuit due to in-depth and widespread media coverage, nor does it provide any explanation for its two-year delay.  But the Court agrees that this matter has proceeded well beyond the initial stages of litigation.  Under similar circumstances, this Court has found proposed intervention to be untimely. *See, e.g.*, *Keybank Nat. Ass'n v. Perkins Rowe Associates, LLC*, 2010 WL 2008845, at *3 (M.D. La. May 19, 2010) (motion to intervene filed nine months after action instituted and where substantial discovery had taken place and dispositive motions had been filed was untimely where "advancement beyond the initial stages evidences a significant prejudice to the existing parties, particularly [plaintiff], whose orderly progression through the litigation would be hampered by intervention.").  Moreover, while TPCG asserts that it will be bound by the present parties' current

---

[17] R. Doc. 185.

[18] R. Doc. 187, ¶ 1.

[19] R. Doc. 187, ¶ 1.

schedule and witness lists, "[a]dditional parties always take additional time.  Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like…."  *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972, 973 (D. Mass. 1943)).[20]  Finally, and as discussed below, this Court finds that TPCG's interests are adequately protected by the current Defendants.  Under such circumstances, the Court finds TPCG's proposed intervention untimely.

### B.  Intervention of Right

#### 1.  The Voting Rights Act

Pursuant to Fed. R. Civ. P. 24(a)(1), on timely motion, the court must permit anyone who, "is given an unconditional right to intervene by a federal statute."  TPCG asserts that Section 2 grants it such unconditional right.  52 U.S.C. § 10301(a) provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

TPCG reasons that because it is the political subdivision Plaintiffs allege is applying a voting practice or procedure in violation of Section 2, "it would have been a proper original defendant in Plaintiffs' Complaint" and accordingly, Section 2 "confers upon it an unconditional right to intervene in this action."[21]

---

[20] TPCG's proposal to be bound to the same witnesses as listed by the current parties underscores, in the Court's opinion, the fact that TPCG's interests will be adequately represented by the current Defendants.

[21] R. Doc. 187-1, p. 4.

The Fifth Circuit has found that "in the absence of an express provision for intervention," § 707 of Title VII did not grant an unconditional right of intervention. *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 844 (5th Cir. 1975). In reaching that conclusion, the Fifth Circuit contrasted the section at issue with another section of Title VII, which explicitly conferred upon the "person or persons aggrieved" a right to intervene in a civil action. *See*, *id*. at 842-43. TPCG argues that "[t]he fact that the Voting Rights Act incorporates specific reference to a state's political subdivision would logically seem to strongly militate in favor of the political subdivision's involvement as a party litigant in an action directly addressed to an issue arising within the particular political subdivision's geographic jurisdiction."[22] However, the Court finds that while Section 2 prohibits both a State and a political subdivision from imposing or applying practices or procedures that abridge or deny the right of any citizen to vote on account of race or color, the section falls short of providing an express procedural provision for intervention. As pointed out by Plaintiffs, Congress did expressly allow intervention in the context of other sections of the Voting Rights Act. *See*, 52 U.S.C. § 10303(a)(4). Accordingly, the Court finds that Section 2 does not confer upon TPCG an unconditional right to intervene.

### 2. Federal Rule of Civil Procedure 24(a)(2)

Pursuant to Fed. R. Civ. P. 24(a)(2), a party is entitled to intervene in a pending lawsuit when: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that is the subject of the action in which he seeks to intervene; (3) the potential intervenor is so situated that disposition of the case may as a practical matter impair or impede his ability to protect his interest; and (4) the parties already in the action do not adequately protect the potential intervenor's interest. *Ford v. City of Huntsville*, 242 F.3d 235,

---

[22] R. Doc. 191, p. 3.

239 (5th Cir. 2001).  As noted above, the Court has found that TPCG's proposed intervention is not timely.  However, in the interest of completeness, the Court will also analyze whether TPCG has established the other requirements for intervention under Fed. R. Civ. P. 24(a)(2).

### i.   TPCG's Interest

TPCG asserts that it "has a compelling and legitimate interest, on behalf of its citizens, that each member of the 32nd Judicial District Court will impartially administer justice and be responsive to each and every citizen of the Parish of Terrebonne."[23]  TPCG refers to this concern as the concept of "linkage," i.e., maintaining the "link" between judicial officers and the citizens over whom they preside.[24]  In addition to its "linkage" concern, TPCG argues that the creation of special subdistricts would "promote racial polarization rather than alleviate any purported problem"[25] and that the creation of such subdistricts would create administrative and fiscal burdens on TPCG.[26]  Finally, TPCG argues that Plaintiffs' Illustrative Plan,[27] if adopted, "would substantially and adversely impact [TPCG's] existing election districts"[28] and would result in increased election costs to the Parish Council and the State.[29]  Plaintiffs argue that TPCG does not

---

[23] R. Doc. 187-1, p. 5.

[24] R. Doc. 187-1, p. 5.

[25] R. Doc. 187-1, p. 6.

[26] R. Doc. 187-1, pp. 6-8.  *See also*, R. Doc. 191, p. 3 ("As Proposed Intervenor has previously explained, it has direct, substantial, and legally protectable interests, (a) both on behalf of its citizens and voters and in its own right as a litigant, in the 'linkage' between its local judges and the constituency whom they serve, a concept promoting judicial impartiality, and (b) also by reason of its direct fiscal responsibility toward its local court system.").  TPCG asserts that it "has strong administrative and pecuniary fiscal interest that warrant consideration in this action." R. Doc. 187-1, p. 6.  In support of that assertion, TPCG outlines its actual expenses for the 32nd JDC and explains that if a sixth judicial office in the 32nd JDC is created, it "would be forced to incur even more expenses…." R. doc. 187-1, p. 7.

[27] In support of their Motion for Summary Judgment, Plaintiffs submitted an "Illustrative Plan" to demonstrate the feasibility of a five-district plan that would comply with constitutional voting requirements.  As Plaintiffs explain, the Illustrative Plan demonstrates "the feasibility of a single-member district plan for electing members of the 32nd JDC in which Black voters constitute a majority (at 50.81%) of the VAP in one district." R. Doc. 91-1, p. 4.

[28] R. Doc. 191, p. 4.

[29] R. Doc. 191, p. 5.

8

have a legally protectable interest in the first instance because it lacks the power to determine the manner in which district judges are elected.[30]  Further, Plaintiffs assert that under Fifth Circuit precedent, TPCG's interest cannot be based on TPCG's concerns about increased costs.[31]

"To prove the requisite interest, an intervenor must demonstrate a 'direct, substantial and legally protectable' interest in the property or transaction that is the subject of the suit."  *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989).  *See also*, *John Doe No. 1. v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001) ("A potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene, if the potential intervenor has a 'direct, substantial, [and] legally protectable' interest in the property or transaction….") (citing *Sierra Club v. Epsy*, 18 F.3d 1202, 1207 (5th Cir. 1994) & *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)).  "A movant found to be a 'real party in interest' generally establishes sufficient interest."  *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989).  "Under that test, a 'real party in interest' may be ascertained by determining whether that party caused the injury and, if so, whether it has the power to comply with a remedial order of the court."  *Id*.  The Fifth Circuit has denied intervention to a county in a voting rights action where the county "played no part in creating judicial districts" such that it "couldn't have caused the injury, nor is it in any position to effect a remedy."  *Id*.  at 187-88.

The Court notes that it has previously ruled that the current Defendants are proper defendants in this action and that complete relief may be afforded amongst the existing parties.[32]  Moreover, the Fifth Circuit has explained that "[b]y requiring that the applicant's interest be not

---

[30] R. Doc. 188, p. 5.

[31] R. Doc. 188, pp. 6-7.

[32] R. Doc. 171, p. 11.

only 'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more than an economic interest is necessary." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 465 (5th Cir. 1984).  *See also*, *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 188 (5th Cir. 1989) (county's concerns "about increased costs, voter confusion, venue problems, or the possible abolition of specialty courts" did not amount to a legally cognizable interest sufficient to support intervention in Voting Rights Act case).  Accordingly, the Court finds it questionable that TPCG has a "legally protectable interest" in this suit.  However, even assuming TPCG has a legally protectable interest, as discussed below, the Court finds that the Defendants already in the suit will adequately protect TPCG's interest.

### ii.    Adequacy of Representation

Plaintiffs additionally argue that even if TPCG had a cognizable interest in the 32nd JDC's electoral method, TPCG has made no showing that the current Defendants are inadequately representing those interests.[33]

TPCG has "the burden of demonstrating inadequate representation."  *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994).  "However, 'minimal' this burden may be, it cannot be treated as so minimal as to write the requirement completely out of the rule."  *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).  Further, "where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994).  "In a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all its citizens." *Id*.  Moreover, the Fifth Circuit has held that "'[w]hen the party seeking intervention has the same ultimate objection as a party to the suit, a presumption arises that its interests are adequately represented,

---

[33] R. Doc. 188, p. 7.

10

against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'" *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984) (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1981)).

TPCG explains that "[w]hile [its] interests are certainly aligned and parallel with those of the present Defendants, they are not perfectly congruent."[34]   TPCG goes on to state that "[n]o criticism of the Attorney General's vigorous defense to date is intended or implied in the conclusion that his representation is not adequate to protect the special local interests of the Proposed Intervenor in this case."[35]   While TPCG asserts that its intervention is necessary to protect its "special local interests," it does not explain what additional information it would present.  Instead, and contrary to a finding that TPCG's interest are not subsumed into the general interests of the current Defendants, TPCG asserts that if allowed to intervene, it would rely solely on the witnesses already named by the present parties.  Indeed, TPCG cites to the expert report of one of Defendants' experts to support its position that the creation of new precincts would create additional costs.[36]   Moreover, the Court notes that Terrebonne Parish officials have previously submitted declarations in support of Defendants' dispositive motion[37] and that the current Defendants have raised the issue of "linkage" in previously-filed briefs.[38]

The Court agrees with Plaintiffs that TPCG has failed to overcome the presumption that the present Defendants are adequately representing its objectives.  *See*, *Bush v. Viterna*, 740 F.2d 350, 357-58 (5th Cir. 1984) (denying intervention where Association failed to overcome the

---

[34] R. Doc. 187-1, p. 8.

[35] R. Doc. 187-1, p. 8.

[36] *See*, R. Doc. 191, p. 5.

[37] *See*, R. Docs. 129-12 & 129-13.

[38] *See*, R. Doc. 129, pp. 34-35.

presumption that its interests were adequately represented where the Association "has not indicated a single issue on which it and the Commission differ [and] has not demonstrated that it has anything to contribute to this lawsuit beyond underlining the positions already taken by the Commission or that the Commission will not adequately present those common positions.").[39]

### C.  Permissive Intervention

Permissive intervention is provided for by Fed. R. Civ. P. 24(b) when, on timely motion, the movant seeks intervention based on a "conditional right to intervene" granted by statute or "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(A) & (B).[40]  TPCG asserts that "permissive intervention is warranted especially in situations where those seeking intervention may help contribute special perspectives and insights to aid in the proper development of the factual issues in the litigation"[41] and that its intervention in this suit "will add the special perspective of the political subdivision with the principal electoral responsibilities in the geographic area encompassing the 32nd Judicial District Court."[42]

---

[39] TPCG relies on *Mille Lacs Bank of Chippewa Indians v. State of Minnesota*, 989 F.2d 994 (8th Cir. 1993).  There, the court allowed certain counties and landowners to intervene in an action for declaratory and injunctive relief in connection with hunting, fishing, and gathering rights under an 1837 treaty between the United States and the Chippewa Nation.  The proposed intervenors were counties that owned certain land outright and landowners with interests in real estate in the ceded territory.  *Id*. at 997.  The court allowed intervention, noting that the intervenors sought "to protect local and individual interests not shared by the general citizenry of Minnesota."  *Id*. at 1001. Accordingly, while the *Mille Lac* Court recognized that in some instances, a presumption of adequate representation arises, it declined to apply such a presumption because proposed intervenors' interests were narrower and *not subsumed* in the general interest of Minnesota.  Because the Court finds that TPCG's interests (i.e., in defending the current at-large system in the 32nd JDC) are the same as the current Defendants' interests, the Court applies the presumption of adequate representation here.

[40] Pursuant to Fed. R. Civ. P. 24(b)(2), a government officer or agency may be permitted to intervene on timely motion if "a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order."

[41] R. Doc. 187-1, p. 8.

[42] R. Doc. 187-1, p. 9.

"District Courts are given broad discretion in granting motions to intervene under Rule 24(b)(2)." *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). "When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *Id.* As discussed above, the Court finds that TPCG's interests are adequately represented by the Defendants. To the extent TPCG cannot, as it has apparently done in the past, support Defendants' effort to defend Plaintiffs' suit via declarations from Parish officials or other coordination with Defendants, TPCG may consider seeking leave to be granted *amicus curiae* status.[43] *See, Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (noting that proposed intervenors had already been granted *amicus curiae* status and that "where, as here, the intervenor merely underlines issues of law already raised by the primary parties….a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.") (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972, 973 (D. Mass. 1943)); *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 473 (5th Cir. 1984) ("Where the intervenors do not have a legally protectable interest, are adequately represented by an existing party and will not add to the relevant factual development of the case, the position of amicus may be considered more appropriate than an intervention with full-party status, if, as here, such intervention may materially diminish the original parties' rights.").[44]

---

[43] Plaintiffs do not oppose TPCG's participation as *amicus curiae*. R. Doc. 188, p. 3.

[44] TPCG cites *Theriot v. Parish of Jefferson*, 1996 WL 517695 (E.D. La. Sept. 11, 1996) and *Nash v. Blunt*, 140 FRD 400 (W.D. Mo. 1992) in support of its position that permissive intervention is proper. The Court finds both cases distinguishable. In *Theriot*, the City of Kenner and members of the City Council in that capacity were allowed to permissively intervene with no opposition and "the recognition that these intervenors have enunciated a unique and distinguishable interest apart from the Parish of Jefferson and the United States." 1996 WL 517695 at * 1. Setting

III.     **Conclusion**

For the reasons set forth herein, the Motion to Intervene filed by Terrebonne Parish Consolidated Government[45] is DENIED.

Signed in Baton Rouge, Louisiana, on May 11, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

aside the fact that the intervention was unopposed, the Court here finds that TPCG has failed to enunciate a "unique and distinguishable interest" apart from that already protected by the current Defendants.  In *Nash*, the court allowed permissive intervention based on a jurisdictional concern.  As it explained, "[t]his court was (and, to some extent, is still) concerned that the parties might actually agree on many of the central issues involved in this case, thereby depriving the court of 'opposing parties representing adverse interests' as required by Article III."  140 FRD at 403. While the *Nash* court noted that "[r]edistricting cases seem typically to follow the exception rather than the general rule," thereby indicating intervention in redistricting cases may be more likely, it failed to cite any redistricting cases supporting this proposition.

[45] R. Doc. 187.